# CHARLESTON.

SNYDER *et al. v.* BOTKIN *et al.*

Submitted September 17, 1892.—Decided December 17, 1892.

1. SALES—POSSESSION—PAROL CONTRACT—JUDGMENT CREDITORS.

When a party has purchased land by parol contract, and has been put in possession of the same, so that he has a valid equitable title thereto, said land is not subject to judgments recovered against his vendor after the sale, and possession has been taken in pursuance thereof. (p. 369.)

2. SALES—PAROL CONTRACT—LIEN—JUDGMENT CREDITOR.

A purchaser of land by parol contract which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity has an equitable right in said land so purchased, which a court of equity will fully protect against the lien of a subsequent judgment creditor of his vendor. (p. 371.)

3. LIEN—JUDGMENT CREDITOR.

Where statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of the debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate.

4. SALES—JUDGMENT—PAROL CONTRACT.

Where A. sells land to B. by parol contract, and B. takes possession and control of said land, he thereby acquires an equitable title to the same, which will be protected from a judgment subsequently obtained against his grantor; and the fact that shortly before said judgment was recorded in the judgment lien docket such vendee obtained a deed for said land from his vendor, which he failed to record, will not render said land liable to be subjected to the payment of said judgment. Holt, J., dissenting.

5. BILL OF REVIEW—PLEADING.

It is not allowable in a bill of review to allege matters by way of amendment or supplement to the original bill which will have a tendency to create new issues. Such a course would be foreign to the object of a bill of review.

BROUN & BROUN for appellants cited Code, c. 139, s. 5; Id. c. 13, s. 17; 14 W. Va. 367; 16 W. Va. 791; 28 W. Va. 744; 4 Leigh 268, 276; 8 Leigh 271, 278; 4 Munf. 539; 4 Gratt. 407, 418; 2 Matt. Dig. 387; 29 W. Va. 48; 17 W. Va. 276; Id. 313; 31 W. Va. 9.

A. C. SNYDER for appellants cited 6 Gratt. 119; 10 Gratt. 580; Code (1887) c. 139, s. 5; 11 Leigh 294; 15 Pick. 465; 18 Pick. 314; Code, c. 74, s. 5; 2 Gratt. 182; 29 Gratt. 382.

W. S. LAIDLEY and A. BURLEW for appellees cited Code, c. 139, s. 6; 20 W. Va. 593; Freem. Jdgmts. § 345; Bar. Ch'y Pr. 879, 1008; 14 W. Va. 367 p't 4 Syll.; 16 W. Va. 792, p't 11 Syll.; Code, c. 113, s. 1; Broo. Leg. Max. 127; 3 Burr. 1596; 2 Leigh 268; Tidd Prec. 376; 8 Leigh 279; 4 Gratt. 418; 2 Min. Inst. 271; 17 W. Va. 276; Id. 313; 20 W. Va. 569; 34 W. Va. 122; 2 Gratt. 472, p't 4, Syll.; Sto. Eq. Pl. § 421 and note; Id. 413; 14 W. Va. 367; 16 W. Va. 791; 28 W. Va. 744; 8 W. Va. 174; 32 W. Va. 340; Id. 556; 12 W. Va. 371; 24 W. Va. 697; 3 W. Va. 656; Sto. Eq. Pl. § 407; 20 W. Va. 511.

ENGLISH, JUDGE:

This was a suit in equity brought in the Circuit Court of Kanawha county, and the bill was filed on the first Monday in April, 1889, by Adam C. Snyder, Sarah A. Sentz, Edward Penn, Sarah A. Sentz, administratrix of John W. Sentz, deceased, and Thomas L. Broun, Edward B. Knight trustee for Sarah A. Sentz, against James B. Cabell, William C. Cabell, Mary Cabell, the State Tribune Company, and Sarah Botkin, in which they allege that on the 13th day of November, 1886, two certain decrees were rendered by the Supreme Court of Appeals of this State in favor of Adam C. Snyder, Edward Penn, John W. Sentz, Sarah A. Sentz, Thomas L. Broun, and Edward B. Knight, appellants, and against William C. Cabell and James B. Cabell, appellees, 29 W. Va. 48 (1 S. E. Rep. 241) and for the following sums of money, to wit, four hundred and six dollars and twenty five cents and one hundred and thirty nine dollars and sixty five cents as per exhibits therewith filed, marked "A" and "B ;"—that the two said decrees were recorded in the clerk's office of the County Court of Kanawha county, on the 17th day of December, 1886, in the Judgment Lien Docket Book No. 6, pp. 270, 272, certified abstracts from said decrees, and the recordation thereof as aforesaid were also exhibited, and made part of said bill;— that the said decrees were rendered at the fall special term of the Supreme Court of Appeals held in Charleston, Kanawha county, in the year 1886, and that the first day of said special term of said court commenced on the 12th day of October, in the year 1886—all of which would fully appear by the certificate of O. S. Long, clerk of said Supreme Court, exhibited therewith, and made part of said bill;— that on the 17th day of November, 1882, the said James B. Cabell acquired by deed from Virginia C. Dryden a certain valuable lot, one hundred and seventeen feet front by three hundred and thirty five feet deep, on Washington street, in the city of Charleston, which deed is of record in the clerk's office of the County Court of Kanawha county in Deed Book 38, p. 443, a copy of which is also exhibited;—that the said James B. Cabell conveyed the upper half of said lot to his brother William C. Cabell by deed dated July

20th, 1883, which deed is also of record in said clerk's office in Deed Book 39, p. 367; that on the 25th day of November, 1885, the said James B. Cabell conveyed to his mother (then a very old woman) Mary Cabell, the estate, during her natural life, in the lower half of the said lot purchased as aforesaid by him from Virginia C. Dryden, the said lower half of the said Washington street lot being that portion thereof which adjoins a certain property formerly held and owned by the said Adam C. Snyder, which deed to the said Mary Cabell is also of record in said clerk's office in Deed Book 43, which was also exhibited;—that on the 8th day of October, 1886, the said James B. Cabell and his mother, Mary Cabell, conveyed the lower half of said Washington street lot to the State Tribune Company, which deed was recorded in said clerk's office of the County Court of Kanawha county on the 13th day of October, 1886, in Book 45, p. 153, a copy of which deed was also exhibited;—that on the 23d day of December, 1886, said State Tribune Company conveyed the said lower half of said Washington street lot to said Sarah Botkin, which deed is recorded in Book 45, p. 407, in said county clerk's office, and was recorded therein on the 24th day of December, 1886, a copy of which deed is also exhibited as part of said bill.

Plaintiffs further allege that the two decrees aforesaid, rendered during the fall special term, 1886, of the Supreme Court of Appeals, had by operation of law the same force and effect as if they had been rendered on the first day of the said special term of the Supreme Court of Appeals, which first day was the 12th day of October, 1886;—that the deed aforesaid from James B. Cabell and his mother, Mary Cabell, to the State Tribune Company, was not recorded until October 13, 1886; that the recordation of the said deed to the State Tribune Company was one day subsequent to the first day of said fall special term, 1886, of the Supreme Court of Appeals of West Virginia, held in Charleston, Kanawha county, as aforesaid;—that the two decrees, for four hundred and six dollars and twenty five cents and one hundred and thirty nine dollars and sixty five cents, were each unpaid at the date and execution of

the deed aforesaid from James B. Cabell and mother to said State Tribune Company, and that said decrees are still unpaid;—that executions issued thereon severally, and the return on said execution was " No property found " to satisfy same, as would appear by copies of said executions therewith filed;—that at the date and execution of said deed by James B. Cabell and his mother to the State Tribune Company the said James B. Cabell held a valid fee-simple title to the lower half of the said Washington street lot, subject to the life estate of his mother, Mary Cabell, therein—that is to say, the said Mary Cabell was then vested with an estate during her natural life in the lower half of said Washington street lot, and said James B. Cabell was vested with the remainder in fee-simple to said lower half of said lot;—that the said deed from James B. Cabell and his mother to said State Tribune Company was void, and of no effect as to the recorded liens of said two decrees on James B. Cabell's said interest and estate in said lower lot;—that the said decrees, by operation of law, related back to the first day of said special term of the Supreme Court of Appeals and on said day, which was October 12, 1886, the said decrees continued and remained in full force and virtue on, from, and after the said 12th of October, 1886, and constituted valid and subsisting liens on James B. Cabell's aforesaid interest and estate in the lower half of said Washington street lot at the date of the recordation of said deed to the State Tribune Company, to wit, October 13, 1886, and that said liens were still in force on James B. Cabell's said interest and estate in said lower lot, and that they have been in full force thereon since October 12, 1886, and had never been paid off, discharged, or satisfied in whole or in part;—that the said interest and estate of the said James B. Cabell in the lower half of the said Washington street lot was, and still is, subject to the payment of the recorded liens aforesaid of plaintiffs, notwithstanding the conveyance aforesaid, from the said James B. Cabell and mother to the State Tribune Company and from said company to the said Sarah Botkin.

The plaintiffs pray that said deeds from James B. Cabell and mother to said company and from said company to

Sarah Botkin for the lower half of said lot may be de-
clared null and void so far as the said deeds do in any wise
affect or were intended to impair the validity of the liens
obtained, by the rendition of the two decrees aforesaid,
against the estate and interest of the said James B. Cabell
in the lower half of said lot; and that said lower half of
said lot may be sold to satisfy the decrees aforesaid, and
the costs of this suit.

The plaintiffs filed as exhibits with their bill abstracts
from the mandate of the Supreme Court which were re-
corded in Kanawha Circuit Court clerk's office, which were
recorded in the judgment lien docket in the office of the
clerk of the County Court, but filed no authenticated copy
of the decree of said Supreme Court from which said ab-
tracts were taken.

At the June rules, 1889, the defendant Sarah Botkin
filed her answer to plaintiffs' bill, in which she says that
without waiving her demurrer to complainants' bill, but
insisting thereon, for answer to said bill says that she was
not fully advised as to the action of the Supreme Court of
Appeals of West Virginia in the suit of *A. C. Snyder et al.*
v. *W. S. Cabell et al.*, and hence she denied complainants'
allegations that two certain decrees were made and entered
therein on the same day in November, 1886, and called for
strict proof of said allegation.

· She further alleged that the first day of said special term
of the Supreme Court of Appeals was met on the 12th day
of October, 1886, as to the said cause; that she is advised
and believes and charges that as to said cause in said court
at said term the 16th day of October, 1886, was the first
day of said term, because that in said cause the Honorable
A. C. SNYDER, one of the judges of said court, was incapaci-
tated from sitting, and could not hear, determine, or ren-
der any judgment whatever, but was compelled at all times
and under all circumstances to be absent, and he was at all
times in said cause absent; and that on the first day of
said special term of said court of appeals the Honorable
SAMUEL WOODS, another of the judges of said court, attend-
ed and was present was on the 16th day of October, 1886,
and until the said 16th October, 1886, as to said cause, there

was no court at which any judgment or decree could have been rendered in said cause by said court, there being no quorum as required by law, in the absence of said Judges A. C. SNYDER and SAMUEL WOODS ; and that the first day of said court at which said cause could have been decided was on the 16th day of October, 1886, and so, in the law governing cases of this kind, the said decrees rendered in · said causes could relate back no further than said 16th day of October, 1886.

She also charges that the deed of Mary Cabell and James B. Cabell to the State Tribune Company was dated on the 8th day of October, 1886, was acknowledged on the same day, and on the same day taken to the office of the clerk of the County Court of Kanawha county, and then and there left for record ; and that, so far as the parties to said deed are concerned and all others, the same was a recorded deed on and from the said 8th day of October, 1886, or previous to the first day of the said fall term of said Court of Appeals.

She also says that she is informed and believes, and so charges, that the State Tribune Company purchased the said lot, in said deed described, long before the said 8th day of October, 1886 ; that said purchase was in the summer or fall of 1886, by a verbal, parol contract; and that, in pursuance of said contract, the said State Tribune Company took control and possession of said lot immediately after said purchase, and prior to said 8th day of October, 1886, and held continued control and possession thereof until the sale to Sarah Botkin ; and that previous to the 8th of October, 1886, the said Tribune Company paid the agreed price for said lot ; and that on and before the 8th of October, 1886, the said purchase contract of said lot was executed in full, except the conveyance of the legal title by said deed on the 8th day of October, 1886, as aforesaid; and that complainant's pretended lien was never a lien upon said lot.

She denies the complainants' allegations in said bill made whereby any lien was acquired by said decrees stated in any manner upon the said lot. She also denies that any decrees made in said court of appeals in said cause stat-

ed related back to the 12th day of October, 1886, or that said decrees were in any manner a lien upon respondents' land; and puts in issue the allegations of plaintiffs' bill as to the date when the deed to said State Tribune Company was recorded, as to the issue of executions upon said decrees, as to abstracts of said decrees being furnished by the clerk of the Circuit Court of Kanawha county to the clerk of the County Court of said county for record in the judgment lien docket, in said County Court clerk's office; and she denies that the docketing of a decree of the Court of Appeals or an abstract furnished as alleged was legally docketed as required by law, or that it constituted any lien or notice, and claims that she was an innocent purchaser without notice for valuable consideration, as was her vendor, of any lien upon said lot, and there was no legally docketed lien upon said lot so purchased by her from the State Tribune Company, and that she holds the said lot free from any lien or incumbrance; and she denies that said deed to the State Tribune Company from Cabell and to her from the Tribune Company are void in any respect.

The defendants, The State Tribune Company and James B. and Mary Cabell, filed answers to the plaintiff's bill, putting in issue the same questions.

Several depositions were taken by both plaintiffs and defendants, and on the 7th day of April, 1890, a decree was rendered in said cause in which it was held that the complainants were not entitled to the relief prayed for, and that the lot sought to be subjected to the payment of the claim set up in said bill was not liable to be subjected therefor, and that the plaintiff's bill should be dismissed with costs.

On the 29th day of June, 1891, the plaintiffs in said cause filed a bill of review to the final decree rendered on the 7th day of April, 1890, in which, after reciting the matters set up in their original bill, and the substance of the answers filed thereto, they insist that the said decree of April 7, 1890, is erroneous, and should be reviewed, reversed and set aside because of the following errors apparent on the face thereof:

(1) The suit of *A.| C. Snyder et al.* v. *James B. Cabell et al.* could have been heard and determined by the Supreme Court of Appeals on the 12th day of October, 1886, which was the first day of the special term thereof held in Charleston, Kanawha county, in the fall of 1886.

(2) The State Tribune Company, by its deed to Sarah Botkin for the lot in question, dated December 23, 1886, admitted that the deed of James B. Cabell and Mary Cabell to the State Tribune Company for said lot was recorded in the clerk's office of the County Court of Kanawha county on the 13th day of October, 1886.

(3) Sarah Botkin in accepting said deed for said lot from the State Tribune Company likewise admitted that the deed from James B. Cabell and Mary Cabell to said State Tribune Company for said lot was recorded in said clerk's office on the 13th day of October, 1886.

(4) The said two decrees rendered by the Supreme Court of Appeals, and embraced in one mandate, constituted in law valid and subsisting liens upon the lot of ground in question prior to the recordation of the deed from James B. Cabell and Mary Cabell to the State Tribune Company, which recordation was October 13, 1886.

They further insisted that the said decree should be reheard, reviewed and set aside because of evidence discovered since the rendition of said decree on the 7th of April, 1890, which evidence the plaintiffs were not able to find out or procure before April 7, 1890, though they diligently endeavored so to do, and which evidence is as follows, to wit :—That the defendants William C. Cabell and James B. Cabell rented to the trustees of the Methodist Episcopal Church (colored) the rink buildings situated on the lot of ground in question until the said building was pulled down and removed therefrom, as hereinafter mentioned, and claimed the said building to be their property, and that they received as rental therefor twelve dollars per month, during said period, from said trustees; that C. J. Botkin, husband of the said Sarah Botkin, purchased the said lot with the rink building thereon upon the condition as to said rink building, viz : That the State Tribune Company should have the right to pull down and remove said rink

building from said lot on or before April 1, 1887, but, if not so removed within said time, then the said rink building should become the property of the said C. J. Botkin ;—that subsequent to this contract of purchase from the State Tribune Company by C. J. Botkin a deed for said lot was, at the instance and direction of said C. J. Botkin, made on December 23, 1886, by said The State Tribune Company to Sarah Botkin, wife of said C. J. Botkin, with the condition aforesaid respecting the removal of the said rink building ; that the said William C. Cabell and James B. Cabell, prior and subsequent to the date of said deed of December 23, 1886, claimed that the ownership of the rink building was in themselves, and not in The State Tribune Company, and directed Henry Payne to remove said rink building from said lot; and, when said Henry Payne was about to carry into effect this direction from the said William C. and James B. Cabell, the said C. J. Botkin stopped this from being done, and asserted that no one had the right to remove said rink building, as the time for exercising that right had expired.

And plaintiffs say they are advised that this newly-discovered evidence, taken in connection with what has before been proven in the suit, would show that the object and purpose of James B. Cabell in executing the said deed of October 8, 1886, to The State Tribune Company, and the object of The State Tribune Company in its reservation about the rink building for itself in the deed of December 23, 1886, aforesaid, to Sarah Botkin, were to delay, hinder and defraud the plaintiffs from collecting the said four hundred and six dollars and twenty five cents and one hundred and thirty nine dollars and sixty five cents decreed to them by the mandate aforesaid, of which fraudulent transaction the said C. J. Botkin had knowledge at and prior to December 23, 1886; and they pray that the said decree of April 7, 1890, may be reviewed, reversed and set aside, and that they may be allowed to produce their said additional evidence therein mentioned, and also a certified copy of the aforesaid mandate in full, as rendered by the Supreme Court of Appeals, in addition to the abstracts of said mandate filed as exhibits with the bill of complaint, a certified copy

of which mandate was exhibited and prayed to be read as part of said bill of review; that the relief prayed for in their original bill against the defendants James B. Cabell and others may be had against the same; and that in lieu of the decree aforesaid rendered April 7, 1890, the court shall decree that the plaintiffs had, by virtue of the mandate aforesaid and the two decrees included therein and the recordation thereof in the clerk's office of the Kanawha County Court on the 17th day of December, 1886, valid and subsisting liens for four hundred and six dollars and twenty five cents and one hundred and thirty nine dollars and sixty five cents, with interest thereon from November 13, 1886, until paid, upon said lot of ground conveyed to the State Tribune Company by James B. Cabell and Mary Cabell as aforesaid; and that the said liens of the plaintiffs have priority over the conveyance of said lot by said company to Sarah Botkin; and that the estate of James B. Cabell in the said lot, as specified in said bill of complaint, shall be sold to satisfy the two decrees aforesaid, with interest and cost thereon until paid.

C. J. Botkin and Sarah Botkin demurred to said bill of review, and also answered the same, putting in issue the new matters alleged, and James B. Cabell and Mary Cabell did the same, and so did the State Tribune Company, and on the 22d day of March, 1892, said bill of review and an amended bill of review, which had been filed, were dismissed with costs, and from this decree, and the decree dismissing the original bill, the plaintiffs appealed.

In considering the questions arising upon this record, I shall, in the first place, notice the fact that the original bill had for its object the enforcement of what was alleged and claimed to be a judgment-lien against a portion of a lot of land situated on Washington street, in the city of Charleston; and in support of said allegation the plaintiffs exhibited with their original bill certified abstracts from a mandate of the Supreme Court of Appeals, which had been entered upon the record-book of the Circuit Court of the county of Kanawha, and had thereby become judgments of said Circuit Court, which abstracts appeared to have been recorded in the judgment-lien docket in the clerk's office

of the County Court of Kanawha county on the 17th day of December, 1886.

These abstracts were the only proofs offered of the existence of said liens claimed as aforesaid, and the defendants in their answers denied that said decrees were rendered for the alleged amounts against them in November, 1886, by the Supreme Court of Appeals.

The question then is: Were these abstracts sufficient evidence of the existence of said decrees? and could the plaintiffs succeed in subjecting said lot to sale upon this evidence of the existence of said decrees? Our statute (Code, c. 139, s. 1) provides:

"A decree for land or specific personal property, and a decree or order requiring the payment of money, shall have the effect of a judgment for such land, property, or money, and shall be embraced by the word 'judgment,' where used in any of the succeeding chapters."

Section 5 of said chapter provides that every judgment for money rendered in this State heretofore or hereafter against any person shall be a lien on all real estate of or to which such person shall be possessed or entitled at or after the date of such judgment, or, if it was rendered in court, at or after the commencement of the term at which it was so rendered, except as follows, *etc.*

Upon the question as to whether such an abstract as was filed in this case, taken from the judgment-lien docket, was sufficient when the existence of such judgment is denied, and proof thereof is called for in the answer, this Court held in the case of *Dickinson* v. *Railroad Co.*, 7 W. Va. 391 (p't 7 of Syllabus).

"An authenticated copy from the recorder's docket under the provisions of the third and fourth sections of chapter 139 of the Code of 1868 of West Virginia is evidence that such abstract was docketed, and when, and of notice to purchasers of lands upon which the alleged judgment is claimed to be a lien when the existence of such judgment is properly proved; but when the judgment is put in issue, ordinarily, an authenticated copy of such abstract as docketed by the recorder will not be received as proof of the judgment, and dispense with the necessity of producing a properly authenticated copy of the judgment."

In the case of *Anderson* v: *Nagle*, 12 W. Va. 98 (p't 2 of Syllabus) precisely the same was held.

Again, it is earnestly insisted by counsel for the appellees that said decree of the Supreme Court of Appeals, if properly proven and authenticated, did not relate back to the 12th day of October, 1886, for the reason that A. C. Snyder, one of the plaintiffs, was a member of the court, and, although a session of the Court was held on that day, yet *quoad* this suit it was no court, and the term of the court as to this suit did not commence on that day.

I regard this position as untenable, for the following reasons: Our statute provides, in sections 10 and 12 of chapter 113 of the Code, how special terms may be appointed to be held. Section 10 provides that "special terms of the Supreme Court of Appeals may be held for the trial and decision of causes at any of the places now designated by law for holding the regular terms of said court, or which may be hereafter designated by law for holding the regular terms, at such time or place as the said court may designate by an order entered on its record at a regular term of said court; and the said court, by such order, made at a regular term in one grand judicial division, may order and direct such special term to be held in the same or any other judicial grand division, and said court may, at any special term authorized by this chapter, decide any cause which may have been heard at a previous regular or special term."

Section 12 provides that "the judges of said court, or a majority of them, may, by warrant signed by them, appoint a special term," *etc.* It appears from an order of said Supreme Court, which is filed with the deposition of O. S. Long, that "at a Supreme Court of Appeals held in Charleston in Kanawha county, on Tuesday, the 12th day of October, 1886, pursuant to law and to an order made in regular term at Charleston—present, Hon. OKEY JOHNSON, president, Hon. T. C. GREEN, Hon. A. C. SNYDER, absent, Hon. SAMUEL WOODS—an appeal and *supersedeas* was allowed in the case of *Petry* v. *Hale*, from Mercer county, *etc.*

Thus it will be seen that the 12th day of October, 1886, was the day fixed for the commencement of the special term,

as required by law, and that on that day the court opened, and an appeal was allowed.

Section 5 of chapter 139 of the Code provides that "every judgment for money rendered in this State heretofore or hereafter against any person shall be a lien on all real estate of or to which such person shall be possessed or entitled at or after the date of such judgment, or, if it was rendered in court, at or after the commencement of the term at which it was so rendered," etc.

This was a judgment rendered in court, at a term, the commencement of which had been fixed, as required by law, at a former regular term; and it can not be said, because there may be some case or cases on the docket which one of the judges is interested in, that the term can not commence as to that case or those cases until the other three judges are present. With as much propriety could it be said that, because the judge of the Circuit Court is so situated that he can not try some particular case, the term does not commence until a special judge is elected to try the case, or a judge from some other circuit takes the bench.

I therefore think the decree which is sought to be enforced in this case related back to the first day of the term, to wit, to the 12th day of October, 1886.

Did the Circuit Court commit an error in dismissing the bill of review? It was held in the case of *Craig* v. *Smith*, 100 U. S. 227, that the introduction of newly discovered evidence under a bill of review to prove facts in issue on the former hearing rested in the "sound discretion of the court, to be exercised cautiously and sparingly, and only under circumstances which render it indispensable to the merits and justice of the case;" and this, we think, propounds correctly the law on this question of practice.

As to the evidence set forth in said bill of review as having been discovered since the rendition of said decree, it has a tendency to show fraud on the part of said William C. and James B. Cabell and Sarah Botkin—something which was not alleged in the original bill—and I do not understand the law to be that a bill of review can operate as an amendment to the original bill. Such a course would be foreign to the object of a bill of review; and, even if such was the

law, the allegations as to newly-discovered evidence are met by a denial that any such evidence exists, and the proof sustains the answers.

But, if the facts of this case are conceded to be just as the plaintiffs allege them to be, so far as to the date of the recordation of the deed from James B. Cabell and Mary Cabell to the State Tribune Company, and the relation of the decrees back to the 12th day of October, 1886, and the deed from said Cabells to the Tribune Company, which was executed and delivered to said company on the 8th day of October, 1886, the question remains to be determined, whether said lot would be liable to be subjected to said judgment-liens, even if the decree alleged was fully proven and authenticated, if said lot had been sold by parol contract in March or April, 1886, by said Cabells to said Tribune Company, and said company, immediately after said parol contract, took possession and assumed control of said lot, made improvements upon it, and paid part of the purchase-money, and made satisfactory arrangements for the residue.

In reference to the questions of law arising from this state of facts, Barton, in his Chancery Practice (volume 2, p. 981) says : "The registry law, however, is only applicable to written contracts, and when one has purchased land by parol contract, and has been put in possession, so that he has a valid, equitable title to the land, it is not subject to judgments recovered against the vendor after the sale ; whereas, if he had a written contract, and failed to record it, the contract would be invalid as against subsequent purchasers for value without notice."

In the case of *Floyd* v. *Harding*, 28 Gratt. 401, the Court of Appeals of Virginia held that "the registry acts do not apply to a parol contract for land, and T. having paid all the purchase-money, and having been put into possession, so that he had a valid, equitable title to the land, it is not subject to the lien of L. (the vendor). The valid, equitable title of T. is not so merged in the legal title acquired by the deed of L. to him as to subject the land to the lien of the judgment against L." STAPLES, J., in delivering the opinion of the court, says (page 413):

" In the next place, there are other cases, and the present is one of them, where no deed is given until after the judgment is recovered, but the contract is made, the purchase-money paid, the purchaser in possession, and so remaining years anterior thereto. Now, if the title of the purchaser is good against the creditor when the judgment is recovered, can it be the title becomes invalid by reason of the subsequent execution of a deed by the vendor ? The bare statement of the proposition is its own refutation. But let us take the strongest case, that of a valid parol contract so far executed as to pass the equitable title, and subsequently a deed of conveyance, which is, however, not recorded, or, if recorded at all, not until after a judgment recovered. This is the case presented in *Withers* v. *Carter*, 4 Gratt. 407, except that there the contract was in writing, while here, in the case supposed, it is parol ; but the principle is the same. ' No deed of conveyance,' said Judge BALDWIN, ' is necessary to confirm its validity, (the executory agreement) and how an abortive attempt to obtain a valid conveyance can destroy the pre-existing title is beyond my comprehension. Nor can I conceive what merger there can be in regard to creditors of the equitable estate in the legal title by force of a deed which, as to creditors, is a blank piece of paper."

Again, he says : " It will not be denied that these principles apply with equal force to a pre-existing equitable estate, acquired under a valid parol contract, as to one held under a written executory agreement. It may be conceded that when the parol agreement is connected with the deed, and is contemporaneous with it, it must be regarded as forming part of the same transaction. In such case possession would, perhaps, be considered as taken under the deed and as referable to it ; but where there is a parol agreement under which the purchaser takes possession, and which of course is valid without deed, no good reason is perceived why the subsequent execution of a deed should either invalidate the title thus acquired or preclude proof of it in a proper case."

This question, however, has been before this Court, and has been passed upon ; and in the case of *Renick* v. *Lud-*

*ington,* 20 W. Va. 569, GREEN, J., in delivering the opinion of the Court, says :

"After this cause was formerly remanded to the Circuit Court of Greenbrier county, F. H. Ludington, one of the parties who had united in the former appeal to this Court, proved that certain lands which the Circuit Court had decreed to be sold by the decree of June 21, 1876, and which in this respect had been affirmed by this Court, had been sold to him by a parol contract, more than twenty years ago. He had paid all the purchase-money at that time, and had been in actual and open possession of the land from the time of his purchase, though he had but recently got a deed for the same, which was recorded.   Now, it is obvious that as the law is now settled in this State and in Virginia, this land ought not to be decreed to be sold to pay the judgments recently had against his vendor, S. C. Ludington, because by the decision in *Pack* v. *Hansbarger,* 17 W. Va. 313, and *Snyder* v. *Martin,* Id. 276, these lands could not be held liable for the payment of any judgments rendered against the vendor, after said parol contract for their sale and the possession under such contract was taken."

In the case of *Snyder* v. *Martin,* 17 W. Va. 276 (point 6 of syllabus) this Court held that a "purchaser of land by parol contract, which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity, has an equitable right in said land so purchased, which a court of equity will fully protect against the liens of a subsequent judgment creditor of his vendor."

In the case of *Pack* v *Hansbarger,* 17 W. Va. 313, the syllabus is as follows :  "(1) H., by parol contract, sells to Mc-N. a tract of land, and McN., upon faith of such contract, pays H. the full amount of the purchase-money, and is put into possession of said land, and McN. and those claiming under him, after so taking possession of the land, continue in possession of the same, *etc.,* upon faith of said contract. Some time after all this occurred, but while said McN. was still in possession, P. obtained a judgment against H., his debtor, and caused it to be duly docketed.  H., some time after said parol contract had been so executed, made a deed

to McN. for said land, which was not admitted to record until after the said judgment was rendered. Held that, while said deed is void as to P.'s said judgment, McN. and those claiming said land under him by parol contract, executed by payment of part of the purchase-money to McN., and by the delivery of possession by said McN. to his said parol vendees of the land, and the making of improvements thereon by the last-named vendees, have an equitable interest in said land by virtue of said parol contract between H. and McN., executed as aforesaid, prior and superior to the judgment lien of said P.; and that, in a suit in equity brought by said P. to enforce the lien of such judgment against said land, said equitable interest of McN. and his parol vendees, so acquired in said land, will be protected against said judgment, and the land will not be sold to pay the judgment of P."

Applying, then, the principles announced in these cases to the facts disclosed in the case under consideration, our conclusion is that the decrees complained of must be affirmed, with costs and damages.

HOLT, JUDGE, (*dissenting*).

Concede that this verbal contract for the sale of land has been so far and in such way partly executed as to entitle the vendee to specific performance against his vendor, an issue, so far as here made, the vendor himself may help to make out in favor of the vendee, but against the right of the case, yet, as against a judgment-creditor of such vendor, his vendee should not be permitted to plead his violation of one statute in excuse for his violation of another—his violation of the statute of parol agreement (chapter 98, Code) in excuse of the violation of the recording act (sections 4, 5, c. 74, Id); especially as he has long been empowered and invited to put his executory contract on record, and thereby make it good against his vendor's judgment-creditor (section 2, c. 73, Id.)  See dissenting opinion of JOHNSON, J., in *Snyder* v. *Martin,* W. Va. 276.

AFFIRMED.