# CHARLESTON.

MARSHALL'S EX'R *et al. v.* HALL *et al.*

Submitted September 5, 1896—Decided December 5, 1896.

1. TRUST FUNDS—IMPLIED TRUST.
   A trust fund may be pursued by the beneficiaries, as long as the same can be identified, into any land or other form of investment made by the trustee, as the law raises an implied trust as to such property in their behalf.

2. TRUST FUNDS—CREDITORS BILL—PARTIES TO SUITS.
   When the beneficiaries of such a trust are known to the plaintiffs instituting a general creditors' suit against the trustee to subject his property to the payment of his debts, such beneficiaries must be made formal parties to such suit; and they are not bound by the decrees therein by reason of the publication of the general notice to lienholders required by chapter 139 of the Code.

J. F. ENGLE and D. B. LUCAS for appellants.

J. F. ENGLE, cited 2 Min. Inst. p. 220; 41 W. Va. 332; 6 Pa. St. 296; 11 Pa. St. 393; 18 N. Y. Rep. 448; 95 Mo. 33; 82 Va. 417; 9 Ind. 132; 27 Am. & Eng. Enc. Law, 162; 71 Ala. 159; 49 Vt. 270; 41 Ala. 262; 31 Cal. 17; 16 N. J. Eq. 181; 6 B. Mon. (Ky.) 106; 28 Pa. St. 430; 5 Pa. St. 132; 37 W. Va. 355; 31 Gratt. 70; 24 Gratt. 454.

McDONALD & BECKWITH for appellee, cited 5 Sto. Eq. Jur. § 1258; 2 Pom. Eq. Juris. p. 616; Adams Eq. (Am. Ed.) p. 36 (note).

DENT, JUDGE:

The appellants, John L. Briscoe *et al.* tendered their petition in the chancery cause of Ann P. Marshall's executor *et al.* against John H. Hall *et al.*, in the Circuit Court of

Jefferson county, and asked that the same might be filed. Objection was made thereto, which was sustained by the court, and the petition rejected.

The facts set out in the petition are as follows: Mrs. Ellen Waters, deceased, by her last will and testament, among others, made the following devises: "I give and bequeath to my cousin, John Hall, of Jefferson county, State of West Virginia, to him, his heirs and assigns, my farm, situated in Jefferson county, state of West Virginia, which I purchased in the year 1874, with funds belonging to my separate estate, of Edward Tearney, administrator of Thomas Briscoe, deceased, he paying to my executor twelve thousand dollars, in five equal annual payments, bearing interest from the date of my death, such payments to form part of my estate in the hands of my executor, and to be disposed of as hereinafter provided. But in case my said cousin, John Hall, refuses to take said farm at the valuation aforesaid within one month from the date of probate of my will, such refusal to be in writing, signed by him, I then authorize and empower my executor to sell said farm, and direct and will that the proceeds of sale, together with other parts and portions of my estate, shall be applied to the payments of my debts, funeral expenses, legacies, pecuniary and residuary, as hereinafter devised. I will and direct my executor to pay to my cousin, John Hall, of Jefferson county, West Virginia, such sum of money as may be necessary to procure suitable head and foot stones to mark the graves of my mother and myself, not to exceed, however, the sum of seven hundred dollars, and, after my death and burial in the churchyard alongside of the remains of my mother to erect the same; and I hereby request and direct my said cousin, John Hall, in case he survives me, to see that my remains are interred in the graveyard in Virginia beside those of my mother, all expenses of which I direct to be paid out of my estate. I give and bequeath to my cousin, John Hall, the debt of fifteen hundred dollars which he now owes me. I give and bequeath to my cousin, John Hall, of Jefferson county, state of Virginia, the sum of three thousand dollars in trust, to have and to hold the same, and to pay the interest accruing thereon to my brother,

John L. Briscoe, for and during his natural life, and after the death of my said brother, I give, devise and bequeath the said sum of three thousand dollars as follows: I give, devise, and bequeath to Julia Armstead, Bettie Miller, and Julia Gallaher, each, the sum of five hundred dollars, and the residue of said sum I give, devise, and bequeath the same to my sisters, Juliet B. Miller, Elizabeth C. Hall, and Amelia F. Gallaher, equally to be divided between them, share and share alike." John Hall decided to take the farm and pay the twelve thousand dollars. Of this sum the executor of the will borrowed for him of Judge Marshall the sum of seven thousand dollars, to secure which Hall executed a deed of trust on the land; three thousand dollars the executor allowed him to retain as the trust fund devised to him to hold in trust for the said John L. Briscoe and others. Hall failing to pay off this trust deed, George Johnson and Charles W. Ross, executors of Ann P. Marshall, and Charles W. Ross, as trustee, instituted a suit in chancery, convening the creditors of said Hall for the purpose of subjecting the land to the payment of his debts. Such proceedings were had that the liens and their priorities were ascertained and decreed, and the land was sold; but the funds arising therefrom were still under the control of the court. The petitioners, who were not made parties to the suit, as shown by the bill and process, appeared in the suit for the first time, and presented their petition as before mentioned, claiming, by virtue of their funds being invested in the land, they were entitled to a resulting trust to that extent in priority to all liens thereon.

It is settled law that, "when trust funds are invested in land by a trustee, and the title is taken in his own name, an implied trust will be raised in favor of the *cestui que trust*." *Webb* v. *Bailey*, 41 W. Va. 463 (23 S. E. 644); 27 Am. & Eng. Enc. Law, 162. In 27 Am. & Eng. Enc. Law, 250, the law is stated as follows: "If the property has wrongfully passed beyond the control of the trustee by an authorized sale or otherwise, it is the beneficiary's right to follow it, wherever he can identify it and claim it on behalf of the trust." Also (*Id.* 257): "If a judgment creditor of

the trustee has come into the possession of the property, it still remains subject to the trust." *Shryock* v. *Waggoner*, 28 Pa. St. 430. "Whenever a trust fund has been converted into another species of property, if its identity can be traced, it will be held, in its new form, liable to the rights of the *cestui que trust*. So long as it can be identified either as the original property of the *cestui que trust*, or as the product of it, equity will follow it; and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself, so long as it can be ascertained to be such." Thompson's Appeal, 22 Pa. St 16.

Counsel for the appellees lay particular stress on the word "wrongful," as used in connection with the conversion of trust funds, and insist that, as the trustee, John Hall, had the right to have and hold this fund, and pay the interest thereon, he was thereby authorized to buy land with it for his own benefit, which would immediately become subject to his individual debts, and thereby defeat the trust. Such a disposition of the fund, while not morally wrong on his part, would yet be wrongful towards the beneficiaries, within the meaning of the law, and would make the land liable for or take the place of the trust fund. It is the duty of the trustee to keep the fund in such shape that it can always be identified, and, as long as he does this, he is guilty of no moral or criminal wrong; but a court of equity will substitute the investment for the fund. When the trustee, Hall, withheld the amount of the trust fund from the payment of the purchase money which he had agreed to pay in accepting the terms of the devise, he thereby created a charge on the land in favor of the beneficiaries to the extent of the trust fund; for, in law, it was a wrongful conversion of the fund, without properly securing the same, and the law raises an implied trust, against him and all persons having notice thereof. As between the Marshall debt, however, and this fund there can be no priority, although the trustee, Ross, and Judge Marshall had notice, about which there seems to be no question, for the reason that the Marshall money was used to pay off another

portion of the same twelve thousand dollars of purchase money; and, although a deed of trust was executed, the Marshall money would be entitled to share equally with the residue of the purchase money, and could not be reduced to the position of a second lien—this by equitable substitution. *Roush* v. *Miller*, 39 W. Va. 638 (20 S. E. 663); *Cowardin* v. *Anderson*, 78 Va. 88; *Coffman* v. *Coffman*, 79 Va. 504. All these transactions with regard to this purchase money were effected by the executor, Ross, and apparently at the same period of time, as appears from the following extract, of letter written by him to one of the beneficiaries: "Dear Madam. Yours came duly to hand, and contents carefully noted. In reply I send you as full a statement as I can recollect of my dealings with Mr. Hall, and in my dealings with him I have always found him correct. Your sister devised the farm to him upon the payment by him into her estate of the sum of twelve thousand dollars. Of this amount Mr. Hall paid me in cash the sum of seven thousand dollars. This money I borrowed for him from Judge Marshall, of this place, and he secured that sum by a deed of trust on the farm. If you will recollect by the terms of the will he was given three years to pay the money. When I wrote Mrs. W's will, just prior to her death, she desired to give John more time to pay the money. I explained to her by so doing it would keep her estate open, and prevent you and Mrs. Hall, as her 'residuary' legatees, receiving any part until the purchase money was paid, and promised that I would assist John, and give him all the time he might require, and I did so. Two thousand dollars Mr. Wilson raised for him on a small place he had, and which Mr. W. received as trustee for Mrs. Aisquith, and receipted to me as executor for the same. The remaining three thousand dollars I did not require him to pay in cash, for the reason that Mrs. W. bequeathed him that amount as trustee for J. L. Briscoe, and, if he had paid me, I would have had to pay it back. So I took his receipt for that amount less collateral tax of two and a half *per cent.* due state of Md." As to the judgment creditors, they are governed by the law as determined in the case of *Snyder* v. *Botkin*, 37 W. Va. 553 (16 S. E. 591) following *Snyder* v.

*Martin,* 17 W. Va. 276, to the effect that a judgment lien binds only the actual interest which the judgment debtor has in the estate, where statutory enactments do not interfere, and is subject to all the equities which exist in favor of third parties.

. Counsel insist that petitioners are barred from participating in the proceeds of the sale of the land, except as to any surplus that may remain after the payment of the claims audited, by the provisions of chapter 139, p. 883, of the Code. In the case of *Benson* v. *Snyder,* 42 W. Va. 223 (24 S. E. 881) JUDGE BRANNON says: "I think all specific lienors, such as vendors holding liens by executory contract or by reservation in a deed, attachment liens, liens by mortgage, legal or equitable, or legacies charged by will, must be made formal parties; and, if not made such parties, they are not bound by a convention of lienors by publication of notice to lien-holders, under section 7, chapter 139, of the Code." This would apparently limit the lien holders who are subject to the provisions of this section to judgments alone; but, whether this be the law or not, this section is certainly not broad enough, and was never intended, to apply to equitable trusts. The plaintiffs in the suit, through the trustee, Ross, one of them, had full notice of this trust, having been effected by him, and he was fully aware of the names of all the beneficiaries, and they should have been made formal parties to the suit. If the decrees therein were before this Court, it would be compelled to reverse the same, in harmony with its former decisions. *Bank* v. *Watson,* 39 W. Va. 342 (19 S. E. 413). But the only question now presented is as to whether the court erred in not permitting the petition to be filed. To this the answer is obvious. The petition, without naming them, asks that the plaintiffs and the defendants in the original bill be made defendants thereto, and without further process be required to answer the same. The petition should be so amended as to set out all parties by name, and, in case of their failure to appear, should be remanded to rules for process thereon, and the court should grant to the petitioners such relief as the nature of their case demands, as indicated in this opinion. *Goff* v. *Price,* and *Morgan* v.

*Morgan* (decided at this term) 42 W. Va. 384 (26 S. E 287, 294).

The decree complained of is reversed, and this cause is remanded to the circuit court for further proceedings in accordance with the rules of equity.