# CHARLESTON.

GREER *et al v.* MITCHELL *et al.*

Submitted June 17, 1896—Decided Nov. 28, 1896.

1. ESTOPPEL—JUDGMENT CREDITORS—DOCKETED LIENS.

Where the owner of a tract of land conveys the same to his brother by a deed absolute on its face, and allows the said deed to remain for years on the record of the county in which the land lies, thus giving notice to the world of the title thereto in said brother, and third parties extend credit to that brother, and allow him to become indebted to them, and said third parties obtain judgments against said brother for the debts thus created, and docket the same in the county where the land is situated, such creditors thereby acquire a valid lien upon said land, and the party who conveyed said land to his brother, and allowed the deed to so remain recorded, is estopped from claiming title to said land, as against said creditors. (Per HOLT, PRESIDENT, and EN-GLISH, JUDGE.)

2. ESTOPPEL *in pais*—FRAUD.

A party who, by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right, to the detriment of the person so misled. That would be a fraud.

3. FRAUDULENT CONVEYANCE—PRESUMPTION OF FRAUD.

F., who was the owner of a tract of land in Preston county, conveyed the same to his brother I. K., for the avowed purpose of hindering and delaying one of his creditors, and the deed was properly recorded. More than twenty one years thereafter, I. K., then residing and doing business in Wirt county, and becoming involved in debt, conveys two tracts of land he owns in said last named county to his brother F., for the purpose of hindering, delaying, and defrauding his creditors; and about the same time, after two judgments had been docketed against him in Preston county, he reconveys said land in Preston county to his brother F. It must be presumed said last conveyance was made with the same object.

N. J. FORTNEY and R. W. MONROE for appellant.

R. W. MONROE cited 1 Wash. 125; 1 Rob. (Va.) 148; 12 W. Va. 247; 16 W. Va. 443; 22 W. Va. 2; 24 Gratt. 368; 1 Call. 187; 29 Gratt. 27; 18 Am. St. Rep. 795; 21 Am. St. Rep. 289; 4 Am. St. Rep. 707, 708; 15 Am. St. Rep. 584; 47 Am. St. Rep. 622; 16 W. Va. 280, syl. pt. 4; Code, c. 31, ss. 39, 40.

V. B. ARCHER for appellees, cited Code 1868, c. 74, s. 1; Code 1868, c. 72, ss. 1, 2; Code, c. 71, s. 1; Code, c. 74, s. 5; Code, c. 139, ss. 5, 6; 12 W. Va. 246; 15 W. Va. 567; 16 W. Va. 443; 18 W. Va. 695; 21 W. Va. 469, syl. pt. 1; 22 W. Va. 1, 585; 33 W. Va. 168; 23 W. Va. 594, syl. pt. 1; 27 W. Va. 443, 447; 10 W. Va. 87, 321; 15 W. Va. 512; 17 W. Va. 717; 24 W. Va. 238; 39 W. Va. 561, syl. pt. 6; 2 Devlin, Deeds, § 1134.

ENGLISH, JUDGE:

This was a creditors' bill, filed in the Circuit Court of Wirt county, by J. R. Greer, A. Laing, and W. Cruickshank, partners, trading as Greer & Laing, against A. J. Mitchell and Isaiah K. Fortney, late partners as A. J. Mitchell & Co. and others, in which they allege, among other things, that they are merchants in the city of Wheeling, W. Va., and that prior to 1893 they sold goods, wares, and merchandise to the firm of A. J. Mitchell & Co., doing business at Burning Springs, Wirt county, W. Va., and that on the 20th day of June, 1893, they obtained a judgment against the said A. J. Mitchell & Co. in the circuit court of Wirt county, W. Va., for the sum of five hundred and eleven dollars and sixty nine cents, with interest and costs, which costs amount to the sum of fourteen dollars and eighty five cents, a copy of which judgment is exhibited; that on the 8th day of July, 1893, an execution was issued on said judgment, and placed in the hands of the sheriff of said county, and by him levied upon certain personal property belonging to said A. J. Mitchell & Co., and also upon personal property belonging to A. J. Mitchell and Isaiah K. Fortney, individually; that a part of said property

was sold, and the sum of five dollars and thirty five cents was realized from the sale thereof, for which amount the said A. J. Mitchell & Co. are entitled to credit upon the judgment and costs as above set out; that said execution had been returned by the sheriff, and shows that no other personal property belonging to said A. J. Mitchell & Co., or either of the members of said firm, was found by him, out of which the residue of said judgment, interest, and costs could be made; and that no part of said judgment other than said sum of five dollars and thirty five cents had been paid to them by said A. J. Mitchell & Co., or by any person for their benefit; and that the same is still due and owing to plaintiffs.

The plaintiffs further say that A. J. Mitchell and Isaiah K. Fortney owned a tract of land lying on the waters of Chestnut run, in Burning Springs district, Wirt county, W. Va., containing eighty two and forty-six-hundredths acres, conveyed to them by Thomes Floyd and Mary Floyd, his wife, by deed of September 30, 1887, of record in said county, a copy of which deed is exhibited; and they charge that their judgment is a lien upon the aforesaid real estate, as well as upon all other real estate owned by said A. J. Mitchell and Isaiah K. Fortney, or either of them, in the state of West Virginia, and that they are entitled to enforce the lien of their judgment against such real estate, and have the same sold to satisfy their said judgment; that on the 20th day of May, just one month prior to the obtaining of their said judgment, there was recorded in the office of the clerk of the county court of Wirt county a deed from Isaiah K. Fortney and Anna H. Fortney, his wife, to the brother of said Isaiah K. Fortney, one Francis Fortney, of Preston county, W. Va., which deed conveyed to said Francis Fortney two hundred and forty one and forty-three-hundredths acres of land lying in the counties of Calhoun and Wirt, W. Va., known as the Hagans and Burns surveys, for the nominal consideration of four hundred dollars, which is recited in said deed to have been paid in cash, which deed bears date on the 31st day of August, 1892, and is duly recorded in said county of Wirt, which deed is exhibited; and plaintiffs charge that no consideration passed

from said Francis Fortney to the said Isaiah K. Fortney for said last named tract of land, and that, if said four hundred dollars was paid, it was a grossly inadequate consideration for the land so conveyed, and that said deed was made for the purpose of putting said property out of the hands of said Isaiah K. Fortney, in order that he might defeat the just claims of creditors against him, and that as to the creditors of said Isaiah K. Fortney, either in his individual capacity or as a member of the said firm of A. J. Mitchell & Co., said deed is fraudulent and void; that in the month of July, 1893, prior to the 31st day of said month, they caused their said judgments to be docketed in the office of the clerk of the county court of Preston county, W. Va., as shown by abstract exhibited; that on the 31st day of July, 1893, there was admitted to record in said clerk's office in Preston county, W. Va., a deed from the said Isaiah K. Fortney and Anna H. Fortney, his wife, to Francis A. Fortney, which deed bears date on the 22d day of July, 1893, and conveys to the said Francis A. Fortney a certain tract of land therein mentioned, containing one hundred and twenty one and one-fourth acres, more or less, as shown by a deed between Francis A. Fortney and his wife and Isaiah K. Fortney, dated the 1st day of March, 1872, giving the description of the same; that an examination of said deed of July 22, 1893, from said Isaiah K. Fortney and wife to said Francis A. Fortney, discloses the fact that shortly after the deed of said Francis A. Fortney and his wife to Isaiah K. Fortney, it was mutually agreed by the parties thereto that the same should be rescinded, and the agreement having been entered into by the said Isaiah K. Fortney that he should convey said premises back to Francis A. Fortney, and the said tract of land in pursuance of the said agreement, having been allowed to remain charged on the land book of Preston county in the name of said Francis A. Fortney, and he having paid all taxes and held possession of and occupied and made valuable improvements thereon, now, in consideration of the above terms, and the return or repayment of said purchase price, the receipt of which is hereby acknowledged, the parties of the first part thereby granted, sold, and conveyed, with

covenants of general warranty, *etc.*, a copy of which deed is exhibited. The plaintiffs further charge that their said judgment, having been recorded prior to the recordation of said deed of July 22, 1893, is a lien upon said land, and that they are entitled to have their said judgment enforced against said land in the same manner as if no deed had been made to said Francis A. Fortney by his brother Isaiah K. Fortney; and they further charge that there never was any such agreement as is mentioned in said deed of July 22, 1893, between said Fortneys; and they charge that said deed is fraudulent and void as to the creditors of said Isaiah K. Fortney, either in his own right or as members of the firm of A. J. Mitchell & Co., and that the sum of two hundred and fifty dollars therein mentioned to have been paid by the said Francis A. Fortney to the said Isaiah K. Fortney, was never actually and in good faith paid by him.

The plaintiffs then proceeded to state that the defendants Thompson & Jackson obtained a judgment against the said A. J. Mitchell & Co. in the circuit court of Wirt county, W. Va., for eight hundred and sixty six dollars and sixty five cents, with interest and costs, amounting to the sum of sixteen dollars and twenty five cents, which was docketed on the 29th day of June, 1893, which judgment was rendered on the same day, and is equal in priority with plaintiffs' judgment, and was also docketed in Preston county prior to the recordation of said deed from Isaiah K. Fortney and wife to Francis A. Fortney, and is a lien upon the real estate mentioned in said deed; and they say they are informed that a large portion of this judgment of Thompson & Jackson has been paid or secured to them, but they are not advised how much thereof, and call for proof as to what amount, if any, remains unpaid thereon. They further state that on the 30th day of March, 1893, the defendants H. Childs & Co. obtained a judgment against said A. J. Mitchell & Co. for the sum of one hundred and fifty five dollars and ninety cents, before O. C. Morris, justice of the peace of said Wirt county, which was docketed on the 5th day of May, 1893, which judgment they are informed has been fully paid off and discharged; that on the 4th day of May, 1893, the defendants Burgunder Bros. &

Co. obtained a judgment against said A. J. Mitchell & Co. and one John C. Depue for the sum of two hundred and thirty three dollars and two cents with interest and costs, amounting to four dollars and ten cents, before D. J. Jones, a justice of the peace of Wood county, which was docketed on the 15th day of May, 1893, nearly all of which judgment, as they are informed and believe, has been paid to them, or made upon an execution; and they call for proof as to what amount, if any, of said judgment, remains unpaid; that on the 17th day of June, 1893, L. S. Delaplaine, Son & Co. obtained a judgment against said firm of A. J. Mitchell & Co. for the sum of one hundred and sixty six dollars and twenty five cents with interest and costs, amounting to three dollars and sixty five cents, before O. C. Morris, a justice of the peace of said Wirt county, which said judgment was docketed in the county clerk's office of Wirt county on the 20th day of June, 1893, and that no part of said judgment has been paid to said defendants L. S. Delaplaine, Son & Co., that on the 5th day of August, 1893, the defendant H. M. Harper, trading as Harper & Bro., obtained a judgment against said A. J. Mitchell & Co. for the sum of seventy six dollars and forty four cents with interest and costs, amounting to three dollars and sixty five cents before said Justice Morris, which judgment was docketed in said clerk's office August 9, 1893, and that on the same day Hicks & Hoge obtained a judgment against said A. J. Mitchell & Co. for the sum of one hundred and sixty five dollars and forty four cents, with interest and costs, amounting to four dollars, before said Justice Morris, which judgment was docketed August 9, 1893; that on the 17th day of July, 1893, the defendants Harper, Davis & Bailey obtained a judgment against the said A. J. Mitchell & Co. for the sum of one hundred and ninety dollars and sixty one cents and interest and costs, amounting to three dollars and ninety cents before said Justice Morris, which was docketed on the 14th day of September, 1893; that this judgment was also docketed in the clerk's office of the county court of Preston county, W. Va., prior to the 20th day of July, 1893, the day upon which said deed from said Isaiah K. Fortney and wife was admitted

to record in said county; that on the 18th day of September, 1893, Thompson & Jackson obtained a judgment against said A. J. Mitchell & Co. and J. H. Thornton and W. A. Thornton for the sum of one hundred and thirty four dollars and thirty six cents and interest and four dollars and fifty five cents costs, before R. B. Graham, a justice of Wirt county, W. Va., which was docketed in said Wirt county on September 23, 1893; and that this judgment is on a note turned over to said Thompson & Jackson by said A. J. Mitchell & Co., and received by them, and applied on said judgment for eight hundred and sixty six dollars and sixty five cents; and that this judgment for one hundred and thirty four dollars and thirty six cents has been fully paid by the Thorntons, as plaintiffs are informed and believe. Plaintiffs say that they are not advised of any other real estate belonging to said firm of A. J. Mitchell & Co., or either of the members of said firm, but call upon them to disclose any other real estate they are possessed of, if any; that they are advised that they are entitled to bring this suit to enforce their said judgment for the benefit of themselves and the other judgment creditors of the firm of A. J. Mitchell & Co.; and that they are entitled to have the real estate in Wirt county and the real estate of Isaiah K. Fortney in Preston county conveyed by him, as aforesaid, subjected to the payment of the lien of their judgment and the lien of other judgment creditors, as hereinbefore set forth. And they pray that the said deed of August 31, 1892, for said two hundred and forty one and forty-three-hundredths acres of land in Wirt county, may be declared void as to plaintiffs, and charged with the payment of plaintiff's judgment; that the other real estate therein mentioned may be decreed to be subject to the lien of plaintiff's judgment, and all the judgment creditors of said firm of A. J. Mitchell & Co.; that said real estate be decreed to be sold to satisfy such liens; that the case may be referred to a commissioner, to ascertain the real estate belonging to said defendants A. J. Mitchell and Isaiah K. Fortney, or either of them, and the liens thereon, and their priorities.

The defendants, who are creditors of said firm of A. J. Mitchell & Co. filed answers to the plaintiffs' bill, admit-

ting its allegations, and joining in the prayer for an account, and for the sale of the lands mentioned in the bill, situated both in Wirt and Preston counties. An account was directed and taken in the cause by one of the commissioners, to which the following exceptions were filed: "The plaintiff's Greer & Laing and the defendants Thompson & Jackson, J. C. Depue, Harper, Davis & Bailey, Hicks & Hoge, H. M. Harper, and L. S. Delaplaine, Son & Co. on this 21st day of June, 1894, except to the foregoing and annexed report of Commissioner O. C. Morris, for the following reasons: First. Because the matters reported by the commissioner in regard to the tract of one hundred and twenty one and one-fourth acres of land lying in Preston county, and fully described in Exhibit No. 9, filed with the bill in this cause, were not required by the court to be reported by the commissioner, and the matters reported by said commissioner are not pertinent to any requirement of the order of reference made in this cause. Second. If the court should deem said matters so reported by said commissioner as to said Preston county land pertinent, then these exceptors except to said report as to said matters so reported, because the commissioner erred in his report as to said Preston county land, for the reason that his report is contrary to the law and evidence in the case, it clearly appearing that the deed of March 1, 1872, from Francis A. Fortney and wife to I. K. Fortney, was a fraudulent conveyance, made for the purpose of hindering, delaying, and defrauding the creditors of F. A. Fortney then existing. Third. Because the commissioner erred in not finding that the said Preston county land is the property of, and is owned by, the said I. K. Fortney. Fourth. Because the commissioner erred in finding that said deed of March 1st, 1872, conveyed no title to said Preston county land to said I. K. Fortney, but was, in effect, a mortgage. Fifth. Because the commissioner erred in reporting, as to said Preston county land, that the said deed of March 1, 1872, was not made with the intention of conveying the title of said land to said I. K. Fortney. Sixth. Because the commissioner erred in not finding that the said Preston county land is liable to the payment of the judgments of Greer & Laing, Thompson & Jackson, and Harp-

er, Davis & Bailey, said judgments having been docketed in the office of the clerk of the county court of Preston county, W. Va. prior to the recordation of the deed of July 22, 1893, from I. K. Fortney and wife to Francis A. Fortney; and said commissioner further erred in not finding that said Preston county land is liable to the debts of the other exceptors above named."

Francis A. Fortney also answered said bill, denying any knowledge of any fraud in the conveyance mentioned in the bill, and says, in reference to the one hundred and twenty one and one-fourth acres of land situated in Preston county, that he purchased the same from his brother William Fortney about the year 1868, and obtained a deed therefor April 22, 1870, which was properly recorded; that the purchase money was for the time furnished him by his father, Daniel R. Fortney, and the said Isaiah K. Fortney (in what proportion he can not say); that in 1872 he had not repaid his father and brother the money he owed them, and, in addition thereto, was indebted to one John W. Bonafield in the sum of about two hundred dollars which at the time he was unable to pay, and, the said Bonafield becoming clamorous for his debt, the said Isaiah K. Fortney, who was at that time in very easy circumstances, suggested to respondent that, if he would convey the land to him temporarily merely as a security, he (the said Isaiah K.) would loan him the money to pay off the Bonafield debt, and wait with respondent a reasonable time both for that sum and also for whatever was at that time due to him on account of the purchase money aforesaid; that thereupon the deed to said Isaiah K. of March, 1872, was executed, and the money advanced to respondent, and the said debt to said Bonafield, which was all the debt respondent owed (except the purchase-money loan from Daniel R. and Isaiah K. as aforesaid) was paid; that during the year 1873, and possibly 1874, he worked at the carpenter's trade, and repaid said Isaiah K. and his father all he owed them; that said transaction between said Isaiah K. and respondent was never intended or regarded by them, or either of them, as a sale, but the transfer of the title was intended to be only temporary, and only as security for said sum of money, and

for that reason no change was made in the use, occupation, or ownership of said tract of land, and the same was never charged to the said Isaiah K. on the land books of said county; that he has spent years of labor and large sums of money in clearing, fencing, and improving said farm, planting out orchards, etc. He denies that Isaiah K. Fortney ever represented to any one, and especially to the plaintiff, or any of respondent's co-defendants, that he was the owner of said one hundred and twenty one and one-fourth acres of land, or that any credit was extended him on account of the ownership of said tract of land; and he claims said land as his own, and he prays that his answer may be treated as a cross-bill, and that his home may be relieved from the alleged liens and incumbrances, and his title may be quieted, etc.

Depositions were taken, and the cause submitted; and on the 29th day of March, 1895, a decree was rendered in the cause, confirming the report of Commissioner O. C. Morris in all respects except in so far as said commissioner reports that the one hundred and twenty one and one-fourth acres of land situated in Preston county, W. Va., and conveyed by Isaiah Fortney and wife to Francis A. Fortney, by deed July 27, 1893, is not subject to the lien of the judgments of Thompson & Jackson and Harper, Davis & Bailey, against the defendants A. J. Mitchell and I. K. Fortney, partners as A. J. Mitchell & Co., and to that extent the said commissioner's report was corrected, and said exceptions are sustained, and overruling said exception in all other respects, and said report, as so corrected, was confirmed. Said decree finds that said A. J. Mitchell and Isaiah K. Fortney, as partners, are the owners of eighty two and forty-six-hundredths acres of land situated in Burning Springs district, Wirt county, W. Va., and that said Isaiah K. Fortney is the owner of a tract of two hundred and forty one and one hundred and forty-three-thousandths acres, known as the "Hagans & Burns Survey," in said counties of Wirt and Calhoun; that, being so possessed of said land, the said Isaiah K Fortney did, on the 31st day of August, 1892, convey the said lands to his brother Francis A. Fortney, without consideration deemed valuable in law, and in fraud

of the rights of the creditors of said Isaiah K. Fortney and of said firm of A. J. Mitchell & Co.; that on the 31st day of July, 1893, there was admitted to record in the office of the clerk of Preston county, W. Va., a deed dated July 22, 1893, made by said Isaiah K. Fortney and his wife to Francis A. Fortney, conveying one hundred and twenty one and one-fourth acres of land, as before set out; and that; prior to the recording of said deed, there was docketed in the clerk's office a judgment of Thompson & Jackson, and also a judgment of Harper, Davis & Bailey, each against A. J. Mitchell and Isaiah K. Fortney, partners, trading as A. J. Mitchell & Co.; that the liens upon the eighty two and forty-six-hundredths acres of land owned by A. J. Mitchell and Isaiah K. Fortney are as follows: First, a judgment against the firm of A. J. Mitchell & Co. and John C. Depue, in favor of Burgunder Bros. & Co., which has been paid by, as is now averred, and held by, said John C. Depue, which, including interest to date, amounts to two hundred and sixty two dollars and sixty two cents; second, a judgment against said A. J. Mitchell & Co., in favor of L. S. Delaplaine, Son & Co., which, including interest to date, amounts to the sum of one hundred and eighty seven dollars and forty nine cents, and proceeding to give the amounts of the liens, and in whose favor they are, and which tracts are subject thereto, and as to the deed made by Isaiah K. Fortney and wife to his brother Francis A. Fortney, bearing date the 22d day of July, 1893, and recorded on the 31st day of July, 1893, conveying said one hundred and twenty one and one-fourth acres, which is good between the parties, but subject to the judgments of Thompson & Jackson and Harper, Davis & Bailey, which judgments were properly docketed in said county of Preston prior to the recordation of said deed. And it was further decreed that unless A. J. Mitchell and Isaiah K. Fortney, or some one for them, did, within thirty days from the date of said decree, pay the several sums decreed as aforesaid, in favor of said John C. Depue, L. S. Delaplaine, Son & Co., Greer & Laing, Thompson & Jackson, Harper, Davis & Bailey, Hicks & Hoge, Harper & Bros., and Graff, Son & Co., together with the cost of this suit, and

unless the said A. J. Mitchell and Isaiah K. Fortney, partners as A. J. Mitchell & Co., or the said Francis A. Fortney, or some one for them, do within thirty days pay the said Thompson & Jackson and the said Harper, Davis & Bailey the amounts therein decreed to them respectively, and decreed to be liens upon the one hundred and twenty one and one-fourth acres of land in Preston county, W. Va., conveyed to Francis A. Fortney by Isaiah K. Fortney, as above stated, together with a proportional part of the costs of the suit, then the special commissioners therein named should proceed to advertise and sell the said tracts of land in the manner therein described, and upon the terms therein set forth. And from this decree the said Francis A. Fortney obtained this appeal.

The errors assigned and relied on by appellant are as follows: (1) The court erred in holding that the one hundred and twenty one and one-fourth acres of land in Preston county are liable for the judgments of Thompson & Jackson and Harper, Davis & Bailey. (2) The court erred, under the testimony in this case, in not holding the deed of March 1, 1872, a mortgage. (3) The court erred, under the testimony in this cause and the exhibits therewith, in holding that Isaiah K. Fortney had any title to said tract, either legal or equitable. (4) The court erred in not removing the cloud from petitioner's title to said one hundred and twenty one and one-fourth acre tract. (5) The court erred in not dismissing the bill and cross bills of the plaintiffs and all the defendants in so far as they sought to subject petitioner's land in Preston county to the payment of the debts of A. J. Mitchell & Co., or the debts of I. K. Fortney as a member of said firm. (6) The court erred, under the evidence in this cause, and in the absence of original fraud on the part of petitioner or I. K. Fortney, in not holding petitioner's equity superior to that of any of the creditors of A. J. Mitchell & Co., or of I. K. Fortney individually, especially when the alleged credit extended to said Mitchell & Co. was in no way influenced or procured by their knowledge of said deed, nor by any representations to them by said I. K. Fortney as to the same.

It is apparent that the entire controversy in this case is

between the firms of Thompson & Jackson and Harper, Davis & Bailey, an the one hand and Francis A. Fortney, on the other. The question submitted is whether the tract of land in Preston county, containing one hundred and twenty one and one-fourth acres, is liable to be subjected to the judgment liens in the bill mentioned and described in favor of Thompson & Jackson and Harper, Davis & Bailey against Isaiah K. Fortney, as a member of the firm of A. J. Mitchell & Co., composed of A. J. Mitchell and Isaiah K. Fortney. This tract of land appears to have been conveyed to Francis A. Fortney by William F. Fortney, by deed bearing date the 22d day of April, 1870, which was admitted to record on the 18th day of April, 1871. On the 1st day of March, 1872, Francis A. Fortney and wife conveyed said tract of land to Isaiah K. Fortney, in consideration of a cash payment of two hundred and fifty dollars, which deed was recorded in the clerk's office of the county court of Preston county on the 22d day of March, 1872. The judgment of Thompson & Jackson bears date June 20, 1893, and the same was docketed in Preston county, where said land is situated, on the 1st day of July, 1893. The judgment of Harper, Davis & Bailey bears date on the 17th day of July, 1893, and was docketed in the clerk's office of the county court of Preston county on the 22d day of July, 1893. Now, the judgment of Thompson & Jackson having been docketed in Preston county on the 1st day of July, 1893, Isaiah K. Fortney writes a letter to his brother Francis A. Fortney, from Burning Springs, dated the 10th day of July, 1893, in which he says he is sorry to tell him that there will be trouble "about that land of yours, as the deed is in my name. I am sorry such is the case, but you had best see to it. See some good lawyer, and state the facts to him in regard to your paying for the property; also your tax tickets."

On the 22d day of July, 1893, more than twenty one years after said conveyance was made by Francis A. Fortney and wife to Isaiah K. Fortney, a reconveyance was made of said one hundred and twenty one and one-fourth acres of land to Francis A. Fortney; and during all that time said deed stood recorded in the county court clerk's office of

Preston county, giving notice to the world that said land was the property of Isaiah K. Fortney, and an interested party searching the records of Preston county would have been thus informed. And this fact, no doubt, induced Thompson & Jackson and Harper, Davis & Bailey to docket their judgments in said county, and may have had an influence in extending the credit of said firms to Mitchell & Co., of which firm said Isaiah K. Fortney was a member. This fact induced the firm of Thompson & Jackson and Harper, Davis & Bailey to docket their judgments in the clerk's office of the county court of Preston county; and the fact that said Isaiah K. Fortney and wife, on the 31st day of August, 1892, conveyed two hundred and forty one acres of land situated in Wirt and Calhoun counties to his brother Francis A. Fortney, for the stated consideration of four hundred dollars cash, when said Francis A. states, in his deposition, that he did not know said deed had been made to him until some time afterwards, is a potent fact in determining the *bona fides* of both these conveyances, and ·we must presume they were prompted by the same motive.

It is claimed that the deed from Francis A. Fortney to Isaiah K. Fortney, although an absolute deed on its face, was in reality a mortgage; and, although it has been frequently held that this can be shown by extrinsic testimony and the circumstances surrounding the transaction, let us consider whether this deed was intended as an equitable mortgage or trust. When we wish to discover why the deed was executed, we go to the testimony of Daniel R. Fortney, the father of Isaiah K. and Francis A. Fortney, the man who wrote the deed dated March 1, 1872, who states that he understood from both of the parties together that the deed was made to give F. A. Fortney time to meet his obligations to Bonafield; that this deed was made to get the land out of F. A. Fortney's hands, so Bonafield could not grab it. He also says he had no knowledge of Bonafield knowing anything about this conveyance, and J. W. Bonafield, in his testimony, says that F. A. Fortney was indebted to him in the sum of two hundred dollars which was paid to him in June, 1873, by F. A. Fort-

ney, that Isaiah K. Fortney made arrangements with
him in regard to the payment of the money some five
or six months before the money was paid. The deed
from Francis A. Fortney and wife to his brother Isaiah
K. Fortney was executed on the 1st day of March,
1872, and Mr. Bonafield swears that the two hundred dollars
was paid him in June, 1873, by F. A. Fortney, more
than a year after the deed was made by Francis A. to
Isaiah K. Fortney. No consideration passed at the time the
deed was made, and he says Isaiah K. made arrangements
and promised to pay him the money for his brother Francis
A. some five or six months before June, 1873, when the
money was paid. The deed, then, from F. A. Fortney to
Isaiah K., appears to be absolute on its face. The consideration
appears to have been two hundred and fifty dollars.
It appears that no money passed at the time the deed was
made, and both Isaiah K. and Francis A. gave their father
to understand, at the time the deed was made to Isaiah K.,
that said deed was made so as to get the land out of the
hands of Francis A., so that Bonafield could not grab it.
In the case of *Gillespie* v. *Allen*, 37 W. Va. 675 (17 S. E.
184) second point of syllabus, this Court held that "where
the uncontroverted facts in the case show that a debtor, for
the purpose of escaping a pursuing creditor, conveys his
real estate to a purchaser, even for value, who has knowledge
of the creditor's pursuit, and is aiding the debtor to
escape the same, such purchaser will be held to have participated
in the fraudulent purpose of his grantor, and his
conveyance will be avoided as to such creditor," but such
conveyance is good between the parties. By the recitals in
the deed from I. K. Fortney and wife to F. A. Fortney,
dated July 22, 1893, it is stated that the conveyance from
F. A. Fortney to I. K. Fortney, dated March 1st, was in
consideration of two hundred and fifty dollars, and that it
was agreed between the parties that the same should be rescinded,
and a reconveyance made, and that, in consideration
of the repayment of the purchase money, said I. K.
Fortney proceeded to reconvey. This deed, on its face,
shows that there was a sale for two hundred and fifty dollars,
and afterwards an agreement to reconvey, nothing in-

dicating a trust or mortgage. The recitals in this deed must be regarded as particular recitals, which Bigelow on Estoppel (page 365) says are conclusive evidence of the matters stated if the deed is valid. See, also, *Wiley* v. *Givens*, 6 Gratt. 277.

Not only did said F. A. Fortney, by deed absolute on its face, convey this land to his brother Isaiah K. Fortney, but, with full knowledge of the fact that said deed had been placed upon record in the county of Preston, he allowed it to remain there, without demanding a reconveyance for more than twenty one years, and took no steps to obtain a reconveyance of the land until after his attention is called to it by his brother's letter, on the 10th day of July, 1893. By allowing the records of Preston county for this great length of time to give notice to the world that Isaiah K. Fortney is the owner of said land, we must presume that these judgment creditors of Isaiah K. Fortney extended him credit, or were influenced to do so, upon the fact that this land was in his name on the records of said county; and, under the circumstances, the said F. A. Fortney is estopped as to these creditors, who, by extending credit to Isaiah K., placed themselves in a condition different from what they would otherwise have done, from denying that said tract of land, at the time said credit was extended, and said judgments obtained and docketed, was the property of said Isaiah K. Fortney. Bigelow on Estoppel (5th Ed., p. 638) says: "The rule is fundamental that unless the representation of the party has also been really acted upon, the other party acting differently—that is to say, from the way he would otherwise have acted—so that to deny the representation would prejudice him, no estoppel arises. Neither a statement of any kind nor an admission *in pais* can amount of itself to conclusive evidence. But if, on the other hand, the representation has been acted upon promptly, under circumstances such as those already detailed, the party making the statement or guilty of the conduct in question will be precluded from alleging the contrary of that which he has given the other party to understand to be true." The same author, on page 560, says: "And the rule was stated to be that where one, by

his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. · In accordance with this case, it is now a well established principle that where the true owner of property, for however short a time, holds out another, or allows another to appear as the owner of, or as having full power of disposition over, the property, the same being in the latter's actual possession (here the deed carried possession) and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Or, where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure, whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from conduct of the real owner, which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale"—citing numerous authorities. And while, in this case, Isaiah K. Fortney made no sale, yet others sold to him, as we have a right to presume, upon credit acquired by reason of his holding the deed for this land, which he appears to have done for more than twenty one years. So, in the case of *Bates* v. *Swiger*, 40 W. Va. 421 (21 S. E. 874) fifth point of syllabus this Court held that "where one by words or conduct, intentionally causes another to believe in the existence of a certain state of things, or such words or conduct are of such a nature as he has reason to believe will cause him to so believe and such other not knowing to the contrary acts, thereon, the former will be estopped from averring or claiming under a different state of things then existing, and known to him, to the prejudice of the other party." In *Jowers* v. *Phelps*, 33 Ark. 468, the law is thus stated: "Estoppels *in pais* depend upon facts which are rarely in any two causes precisely the same. The principle upon which they are applied is clear and well defined. A party

who, by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be a fraud."

The judgments of Thompson & Jackson and Harper, Davis & Bailey, having been properly docketed in the clerk's office of the county court of Preston county previous to the reconveyance of said one hundred and twenty one and one-fourth acre-tract of land to Francis A. Fortney, constitute a valid lien upon the same; and the said Francis A. Fortney, by his conduct in allowing the deed from himself and wife to Isaiah K. Fortney to remain upon the records of said county for so many years, giving thereby notice that the title was in said Isaiah K. and the right of said judgment creditors having intervened, is estopped from denying the title to said land, to have been in Isaiah K. Fortney at the time said liens were created and attached.

The decree complained of is affirmed, with costs, etc.

BRANNON, JUDGE (concurring).

I agree to the result. If the deed from Frank to Isaiah Fortney were bona fide, and merely to secure a loan, it would be a silent mortgage, and Isaiah would be compelled to convey back on repayment, on proof that, though absolute on its face, it was to be such security. McNeel's Ex'rs v. Auldridge, 34 W. Va. 748 (12 S. E. 851). And such right of the grantor to reconveyance is paramount to the rights of judgment creditors of the grantee in such deed, though docketed before any reconveyance. Such creditors can not sell the land away from the grantor, because creditors can have no greater right than their debtor has; and if the land in his hands is but a security for a debt, or is subject to any other trust or equity against him that is enforceable, the rights of creditors are subject thereto. They take the shoes of their debtor. They can get no more than he has. This seems hard on creditors trusting on the faith that the ap-

parent owner is the true owner, but it is settled law. *Snyder v. Botkin*, 37 W. Va. 355 (16 S. E. 591); *Pack v. Hansbarger*, 17 W. Va. 313. The fact that the deed from Isaiah back to Frank was not on record until after docketing does not render the land liable, under the *Snyder Case*, above, because but an execution of a trust, good against the judgment. Hence this land is not liable on any idea of a secret, unrecorded mortgage. Nor, if the transaction were honest, would the allowance of the deed to stand twenty one years, without reconveyance, subject the land to the judgment on any idea of estoppel. As Frank remained always in possession, his *laches* could not be pleaded against reconveyance, and not by his creditors. I hold the land liable under the head of fraud. The conveyance from Frank to Isaiah in 1872 was to put it out of the way of a creditor, to give time to pay the debt, and keep the creditor from subjecting it at once, thus doing what the statute says shall not be done—hinder and delay the creditor in the pursuit of his debt by law. If a debtor convey to a friend with that purpose, even though the grantee agree to pay the debt, it is a fraudulent transaction, because he may never pay, and tends anyhow to defeat the remedy, by putting the property out of the way of process. It may entirely defraud—it certainly hinders and delays—the creditor. It is born in iniquity. This conferred upon Isaiah a title good against Frank, which he could never get back by law, because of the fraud. It was an absolute estate, liable to Isaiah's creditors; not like a conveyance *bona fide* to secure a debt, or on other lawful trust. Now, before the reconveyance, Thompson & Jackson's and Harper, Davis & Bailey's judgments had been both rendered and docketed, and it was then the ordinary case of a deed kept off the record until after judgment docketed, void as to it. And then the fact of no reconveyance for twenty one years, and then just when Isaiah become involved, inspires us with want of confidence in the claim that it ever was, in fact, a mortgage —casts a cloud over all. Land in Wirt had been conveyed by Isaiah to Frank Fortney, the latter not knowing anything about it, and a consideration stated in the deed false and fictitious, as Frank himself swears. They are broth-

ers. I do not detail all the facts. They give the cast of fraud to their transactions. They differ, too, in statements under oath, one saying the deed of 1872 was to secure a loan to pay off Bonafield (and, by the way, no money being at the time passed, and no arrangement with Bonafield to pay for months later) and the other says it was fresh loan, and an old debt besides. But, turning to the reconveyance deed of 1893, we find it tells a different tale. It does not recite that state of facts, but recites that Frank Fortney having conveyed the tract to Isaiah by the deed of 1872, for a consideration of two hundred and fifty dollars, and that a short time after that conveyance it had been agreed between them that said deed should be rescinded, and the land conveyed back to Frank, and that the land had been on the tax books in Frank's name, and he had paid taxes, and kept possession, and made improvements, therefore it was conveyed back from Isaiah to Frank. Here is spoken an effort to give color and fortify Frank's equity of claim, by payment of taxes and possession. This deed does not recite a conveyance in 1872 as a silent mortgage, but tells of an absolute sale in 1872, and afterwards a sale back. I shall not discuss the law that mere continued use of a prior possession is not sufficient to make effectual oral contracts, or whether improvements would take the case out of one of mere continuance of antecedent possession. I think the case is one of fraud. *Gallagher* v. *Gallagher*, 31 W. Va. 9 (5 S. E. 297); *Miller* v. *Lorentz*, 39 W. Va. 160 (19 S. E. 391). I refer to this deed as telling a different story from the other one, and strengthening the theory of fraud. That there is no evidence to support, but is to contradict, the recital in the deed, forbids our administering relief on its theory, which itself is sufficient for not further discussing the case on that theory. Continuance in possession by Frank Fortney, after his deed to Isaiah, does not seem important. If the contest were one of right to redeem after long time between him and Isaiah, it might be forceful— and so, if the true question between these creditors and Frank were the right to redeem after so long a time; but creditors are seeking to annul the reconveyance deed for

fraud, and that is young. They say that the deed of 1872 gave Isaiah absolute title, without right of redemption, which is originated at a late date falsely to defeat them. If that were honest, perhaps they could not plead *laches*, because a personal plea; and, moreover, possession so long under the right of redemption would be strong to preserve it against their plea or Isaiah's plea of *laches*. But remember they deny this redemption right as fictitious. In that view it is only the case of grantor holding possession after absolute conveyance, which can not give him any right by adverse possession against Isaiah or his creditors, in face of either special or general warranty; certainly not the latter, for, as often as the grantor becomes vested with any title, that warranty vests it in the grantee. *Rowletts* v. *Daniel*, 4 Munf. 473; *Duval* v. *Bibb*, 3 Call, 362.