# CHARLESTON.

SMITH *et al.* v. SMITH *et al.*

Decided April 14, 1900.

| 48 | 51 |
| 48 | 101 |
| 48 | 51 |
| 49 | 325 |

1. FRAUDULENT CONVEYANCE—*Consideration—Insolvent.*

     Where an insolvent party conveys his real estate to his father (from whom he purchased it) for a fair price, a portion of the purchase money being applied to the extinguishment of a ven-dor's lien retained by his father for the purchase money, and to the payment of an attachment lien on the property and other *bona fide* indebtedness, such conveyance cannot be set aside as fraudulent by a creditor of said insolvent, who has no lien upon the land, in the absence of any evidence showing a fraudulent intent on the part of such grantor, of which the grantee had notice. (p. 53).

2. INSOLVENT DEBTOR—*Transfer—Valid Priority.*

     A transfer made by an insolvent debtor with the intention of preferring certain ones of his creditors shall be deemed valid as to such preference or priority, unless a creditor of such insolvent debtor, where such transfer was admitted to record within eight months after it was made, shall, within four months after such transfer was admitted to record, institute a suit in chancery to set aside and avoid the same, and cause the property so transferred to be applied towards the payment pro rata of all the debts of such insolvent debtor existing at the time of such transfer. (p. 54).

Appeal from Circuit Court, Tyler County.

Bill by J. R. Smith and others against David M. Smith and others. Decree for plaintiff. Defendant William Smith appeals.

*Reversed.*

MILLARD F. SNIDER, for appellant.

L. W. CHAPMAN and P. M. IRELAND, for appellees.

ENGLISH, JUDGE:

David M. Smith was engaged in the live-stock business in 1894-95. His father, William Smith, and brother W. F. Smith at that time resided in Doddridge County, while J. R. Smith,

another brother, lived in Ritchie, where he was engaged in business with one Chapman. It appears from the record that William Smith, on the 13th of June, 1890, in consideration of eight hundred and fifty dollars, and the further consideration that said David should relinquish any further interest in the estate of the grantor, conveyed to said David a tract of land in Tyler County containing two hundred and ten acres, taking notes for deferred payments, and retaining in the deed a vendor's lien to secure the same. During the year 1895, J. R. Smith and W. S. Chapman purchased cattle, and shipped them to David Smith, at Reading, Pennsylvania, from which point he marketed them. At the close of the year and the beginning of 1896 he became considerably involved in debt. His creditors were demanding their money, and his notes and checks were being protested. On April 20, 1896, J. L. McCullough, one of his Tyler County creditors, instituted a suit against him for the recovery of seven hundred and fifteen dollars, and sued out an attachment against his property, and had it levied on said two hundred and ten acres of land. On returning from Pennsylvania, and finding said attachment levied on his land, David prevailed on his father to buy back said tract of two hundred and ten acres for the consideration of two thousand dollars, out of which the vendor's lien of six hundred and ninety-eight dollars was first paid; then the sum of one hundred and eighty dollars, which David had borrowed from his father; and next the said McCullough debt, amounting to about six hundred dollars; and the remainder was to be paid to W. F. Smith, on what David owed him, amounting to five hundred and seventy-one dollars and forty-six cents,—all of which, except about one hundred and ten dollars, was paid before this suit was brought. The deed reconveying said land from David Smith to his father was dated April 30, 1896, and recorded on the 1st day of May following. On October 15, 1896, J. R. Smith and W. S. Chapman, partners under the name of Smith & Chapman, filed their bill in the circuit court of Tyler County, making said David M. Smith, William Smith, J. L. McCullough, W. F. Smith, J. T. Shirley, O. W. Baty, and P. A. Gilbert parties defendant, setting forth the facts above detailed, and alleging that the reconveyance made by David to his father of said two hundred and ten acres was made with intent to hinder, delay, and defraud the creditors of said

Davis; that said William Smith, David M., and W. F. Smith colluded together in the execution of said deed, for the purpose of cheating and defrauding plaintiffs out of the debt justly due them from David, who is alleged at that time to have been insolvent. Plaintiffs also allege that David remained in possession of said land ever since the date of said reconveyance, and they prayed that said deed of reconveyance be set aside as fraudulent and void as to plaintiffs, and that said land be sold in satisfaction of their debt. The defendants William and and W. F. Smith demurred to the plaintiffs' bill, and answered it, denying every material allegation thereof. Depositions were taken on both sides, and on December 6, 1898, a decree was rendered in the cause holding that said reconveyance of the two hundred and ten acres by David Smith to his father was fraudulent, and decreeing that the same be set aside as to plaintiff's debt, and sold as therein provided, in satisfaction thereof. From this decree William Smith obtained this appeal, claiming that the court erred in decreeing that William, David, and W. F. Smith colluded together to cheat, hinder, and delay and defraud plaintiffs from the collection of their debt, and that they procured the deed to be made by David to his father for the purpose of defrauding the plaintiffs.

The plaintiffs in their bill make this allegation, but it is met by the absolute denial of the defendants in their answer, and, in my view, the plaintiffs fail to sustain their allegations by the evidence. Neither do the circumstances detailed in the testimony warrant the court in rendering the decree it did. When attention is called to the circumstances existing at the time the defendant David Smith returned from Pennsylvania, it is found that J. L. McCullough had brought the chancery suit against David, and sued out the attachment aforesaid against this land for seven hundred and fifteen dollars, which had been levied thereon on the 20th of April, 1896, and this attachment was subject, of course, to the vendor's lien reserved by his father on said land, amounting to six hundred and ninety-eight dollars and fifty-four cents, which, with six years' interest, would make about nine hundred and sixty-dollars. In addition to that, David owed his father about one hundred and sixty dollars and some interest for cattle sold him and money paid for him. Can any fraud be attributed to David in selling his land to his father in satisfaction of his vendor's lien, and in

payment of money advanced and cattle sold? In order to make this sale to his father clear of incumbrance, he was compelled to discharge the McCullough attachment lien, and in so doing applied the purchase money received from his father to the satisfaction of the same, which he had a perfect right to do. He had been sued by McCullough, his land had been levied upon, and, unless this attachment was satisfied, he could only expect that his land would be sold at auction,—perhaps at a sacrifice,—and it was natural and proper that he should go to his father, from whom he had received the deed, and propose to resell the land to him in satisfaction of his vendor's lien and his other claim, and with the residue of the purchase money to pay off such debts as he recognized as just and honest. In the case of *Harden* v. *Wagner*, 22 W. Va. 370, SNYDER, JUDGE, delivering the opinion of the Court, said: "As to the relationship of the parties, it may be stated that, while the law allows no discrimination in favor of creditors by reason of their being related to the debtor, it certainly does not put them at a disadvantage. The debtor may do no more for them than a stranger, but there is no rule of law that he may not do as much."

Now, it appears that the deed from David to William Smith was dated April 30, 1896, and was admitted to record May 1, 1896. So that, if David had been shown to be insolvent, this suit was not instituted within four months after the deed was recorded; and the plaintiff would not, under section 2 of chapter 74 of the Code, as amended in chapter 4 of the Acts of 1895, be entitled to have said conveyance declared void, or to have said property applied *pro rata* upon all the debts owed by said David Smith at the time such transfer was made. Such being the case, what can we find in the circumstances connected with this conveyance to William Smith to entitle the plaintiffs to the relief prayed for? They had taken no steps to create a lien upon the property. The consideration paid for the land by the grantee is shown by the weight of the testimony to have been adequate, and the proceeds arising from the sale, or, at least, the greater portion thereof, appeared to have been applied in satisfaction of liens existing against the property, and the residue in payment of creditors of equal dignity with the plaintiffs. It is true this transaction is one between a son and his father, and the law subjects such to severe scrutiny; but, view this entire deal as we may, including the disposition of the proceeds of

sale, and we find nothing to sustain the allegations of fraud contained in the bill. David denies that he owes plaintiffs anything, and William Smith denies that he knew anything of the state of accounts between plaintiffs and said David, and there is no proof that he did. The facts proven in the case clearly indicate that David Smith, in disposing of his property at a fair price, paying off the vendor's and attachment liens, did nothing more than any prudent business man would have done to prevent a sacrifice of his property at public sale; and, in discharging *bona fide* debts with the money received, we see nothing that deserves the imputation of fraud. In *Harden* v. *Wagner, supra* (Syl., point 9), it is held: "The *onus probandi* is on him who alleges fraud, and, if the fraud is not strictly and clearly proven as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been clear in his dealings." In the case of *Douglass* v. *Douglass*, 41 W. Va. 13, (23 S. E. 671), this Court held that "a *bona fide* sale for a fair price to an innocent purchaser should not be set aside, at the instance of the creditor of the grantor, on the grounds of alleged fraud, for the sole reason that in the opinion of sundry witnesses the property might have brought a larger price if sold on credit"; and, "while transactions between father and son are subject to critical scurity, yet, if the circumstances show them to be fair, open, and free from fraudulent intent, the relationship of the parties will not vitiate or render them void."

Having reached the conclusion that the plaintiffs have failed by the evidence adduced to show such fraud in the conveyance to William Smith as would vitiate the same or set it aside, it was error in the court to decree the plaintiffs entitled to the sum of one thousand eight hundred and fifty-eight dollars and eighty cents against the defendants, and decreeing the same a lien second in priority on said land. The court erred also in decreeing that said David M. and William Smith colluded together to cheat, hinder, and delay the plaintiffs in collecting their debts, and in setting aside and annulling said conveyance to William Smith, in so far and to the extent that it affected plaintiffs' debt. The decree complained of must be reversed, and the plaintiff's bill dismissed.

*Reversed.*