# CHARLESTON.

FARMERS' BANK OF FAIRMONT *v.* GOULD *et al.*

Decided April 14, 1900.

1.  FRAUDULENT CONVEYANCE—*Consideration.*

If a person, to avoid threatened liability, convey his real estate to his brother to secure a *bona fide* indebtedness, and such brother, after all danger of such liability has passed, reconvey such real estate, the creditors of such brother, although he be heavily involved, who have not acquired the right in some manner to charge their debts against such real estate during the time the title thereto vested in their debtor, cannot attack such reconveyance as voluntary, fraudulent, and void as to their debts.  (p. 102).

2.  VOLUNTARY CONVEYANCE—*Actual Fraud.*

Such reconveyance is not voluntary, within the meaning of the statute rendering invalid voluntary conveyances as to creditors, but the true ownership of the property is a sufficient consideration therefor, and, to successfully attack the same, actual

fraud against the attacking creditors must be shown, participated in by the parties to the reconveyance. (p. 103).

Appeal from Circuit Court, Marion County.

Action by the Farmers' Bank of Fairmont against John E. Gould and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

W. S. MEREDITH and F. T. MARTIN, for appellants.

JOHN W. MASON, A. B. FLEMING, and R. F. FLEMING, for appellee.

DENT, JUDGE:

The Farmers' Bank of Fairmont seeks to set aside as fraudulent a deed executed by Jacob N. Gould, deceased, to John E. Gould, his brother, on the 13th day of August, 1887, for certain real estate, and subject the same to the payment of a judgment confessed to said bank by the deceased on the 12th day of August, 1891, for the sum of thirty thousand dollars. The facts are as follows: John E. Gould was the owner of the property in controversy, and, being threatened with litigation in the state of Indiana, owing to an accident occasioned by certain machinery belonging to him, and at the same time being indebted to his brother Jacob N. Gould in the sum of about two thousand dollars, he conveyed such property to his brother, in consideration of two thousand five hundred dollars expressed on the face of the deed, for the purpose of securing such indebtedness, and placing the property beyond the reach of the threatened suits, with the understanding that, on request, the brother would deed the property back to him. He afterwards paid a portion of the indebtedness, and built a new house on the property, at a cost of about two thousand two hundred dollars, and, all danger from the Indiana litigation having passed by, his brother, on the 13th day of August, 1887, deeded the property back to him. In the meantime Jacob N. Gould, who was the cashier thereof, had become involved in his accounts with the plaintiff bank. The amount of his indebtedness was not known until some years thereafter, and he was believed to be solvent until it was fully discovered. He appears to have been engaged in various speculations, and lost heavily. Some time after he had made the deed to his brother,

and after the amount of his defalcation was discovered, he deeded, at the request of the plaintiff, all his property, being of considerable amount, to it, but not sufficient, as shown by his confession of judgment, to cover his shortage.   At the time John E. Gould made his deed to his brother for the property, and at the time of the reconveyance thereof, there was no law in this State against unlawful preferences, but the debtor had the right to prefer such creditor or creditors as he pleased, although such conveyance might operate to hinder, delay, and defeat his other creditors.   *Harden* v. *Wagner*, 22 W. Va. 356.   Property held in trust, even after judgment obtained against the trustee, cannot be subjected to the payment of the judgment.   *McNeel's Exr's* v. *Auldridge*, 34 W. Va. 748, (12 S. E. 851); *Snyder* v. *Botkin*, 37 W. Va. 355, (16 S. E. 591); *Pack* v. *Hansbarger*, 17 W. Va. 313. Nor does relationship vitiate the transaction, if the proof satisfactorily establishes the *bona fides* thereof.   *Butler* v. *Thompson*. 45 W. Va. 660, (31 S. E. 960): *Harden* v. *Wagner*. cited; *Douglass* v. *Douglass*, 41 W. Va. 13, (23 S. E. 671); *Smith* v. *Smith* (decided this term) 35 S. E. 876.   The proof in this case in direct contravention of the allegations of the bill shows that Jacob N. Gould never had any interest in the property in controversy other than as a mere mortgagee to secure his debt, which has been fully paid off and satisfied.   The reconveyance was made before the plaintiff had acquired any right, either at law or in equity, to charge the property with its debt.   The only question, then, is whether the plaintiff, as a creditor of Jacob N. Gould, deceased, has a right to plead the fraud of John E. Gould towards his supposed-creditors, to subject the latter's property to the payment of the former's debts; or, in other words, whether the reconveyance of Jacob N. Gould must be treated as a voluntary conveyance, in so far as plaintiff's debt is concerned.   Had the plaintiff obtained its judgment before the reconveyance was made, and been able to show that it trusted Jacob N. Gould on the strength of his apparent ownership of the property, there is little doubt but what equity would have held the property liable to its judgment lien.   *Greer* v. *Mitchell*, 42 W. Va. 494, (26 S. E. 302).   But neither of these things appears.   Its judgment was not obtained until four years after the reconveyance, and suit was not brought until almost five years thereafter.   And its confidence in Jacob N. Gould had nothing to do with the property in controversy, but was wholly personal, as shown by the conduct

of the officers of the bank. If, also, the reconveyance could be regarded as strictly voluntary, the property would be liable, under the statute, to plaintiff's debt. But can it be so regarded? It is true that John E. Gould testifies that he made the conveyance to prevent the enforcement of any judgment against him that might be obtained by reason of his supposed liability incurred in Indiana, but he also testifies, and the circumstances show, that his object was to secure to his brother the just indebtedness he owed him, and give it priority over his Indiana liability. This latter he had the legal right to do, although it resulted in the former. The property always remained in the possession of the mother. She kept boarders, and Jacob N. boarded with her and paid his board. John E. Gould also added large improvements thereto, almost doubling it in value. No attack was ever made on the original transaction, for fraud, nor is there any such allegation contained in plaintiff's bill. The decedent set up no such claim in his lifetime. On the contrary, he faithfully executed the trust. The law governing this question is stated in 14 Am. & Eng. Enc. Law (2d Ed.) 259: "A conveyance of property for the purpose of defrauding the creditors of the vendor, though fraudulent as to them, is valid as to all other persons, and, so long as the vendee holds such property, it is subject to claims of his creditors to the same extent as any other property to which he has title. But, until such creditors obtain a lien upon the property, the vendee's right of alienation is perfect in respect to it, and it is not a fraud upon his creditors for him to reconvey it to his vendor. Until then the creditors of the vendee have no legal or equitable claim in respect to it superior to that of the vendor, and, if the fraudulent vendee reconveys such property to the vendor, it is generally held that the creditors have no right to have the reconveyance set aside as fraudulent." *Bank* v. *Brady,* 96 Ind. 498; *Bank* v. *Hostetler,* 61 Iowa, 395, 16 N. W. 289; *Clark's Adm'r.* v. *Rucker,* 7 B. Mon. 583; *Cramer* v. *Blood,* 48 N. Y. 684; *Davis* v. *Graves,* 29 Barb. 480; *Powell* v. *Ivey,* 88 N. C. 256; *Stanton* v. *Shaw,* 3 Baxt. 12; *Peck* v. *Jones,* 10 Tex. Civ. App. 335, 30 S. W. 382; Wait, Fraud. Conv. 398. "In some jurisdictions, however, this right of reconveyance is denied, on the ground that the fraudulent vendor has no equitable claim to the property, and it is held that the creditors of the vendee may, notwithstanding the reconveyance, subject the property to the satisfaction of their claims." *Chaplin* v. *Pease,* 10 Conn. 69, 25 Am. Dec. 56; *Walton* v. *Tusten,* 49 Miss.

569; *Smith* v. *Lane*, 3 Peck. 205.   Here is a direct conflict of decisions, with the weight decidedly against the contention of the plaintiff.   The reconveyance is not voluntary, in the sense of the law, as being without consideration.   On the contrary, it is sustained by full consideration.   The vendor is merely trustee of the property for the vendee, the real owner thereof, and equity withholds its aid to enforce a reconveyance, not through want of consideration, but as a penalty to repress and prevent frauds.   It does not deny the true ownership, but, because of his unclean hands, it refuses to the owner its aid to regain his property.   Having regained his property without its aid before the rights of others have attached thereto, it will protect him in it.   Creditors who have not given credit on the strength of the property lose nothing thereby, as their debtor never had any real ownership in the property.   The law might be construed otherwise as to creditors who allege and show themselves to have been defrauded by reason of the title being temporarily in their debtor.   This is not made to appear in this case.   The plaintiff and the defendant John E. Gould both trusted their property in the hands of Jacob N. Gould.   John E. Gould received his property, and no more, so far as the pleadings and evidence show.   Plaintiff failed to receive its property.   This furnishes no reason why John E. Gould should turn over his property to the plaintiff, although he is the brother of the common debtor; for, as the law then stood, he had the right to prefer one creditor to the other, even though such preference might hinder, delay, and defeat the other.   He only returned to his brother the property that rightfully belonged to him, as he was in good conscience bound to do, although he was in a position to have legally defrauded his brother for the benefit of his other creditors.   Because he did not do this, but saw fit to make his brother whole, and no more, is not the perpetration of fraud against the plaintiff, although thereby hindered from applying John E. Gould's property to the satisfaction of its large judgment.   There is nothing in the record showing that John E. Gould was legally or morally bound to pay any portion of the plaintiff's debt, nor to suffer his property to be applied thereon.   For these reasons, the decree complained of is wholly reversed and annulled, and this cause is remanded, to be further proceeded with according to the rules and principles governing courts of equity.

*Reversed.*